## COMMONWEALTH *vs.* JERARD VIVERITO.

Suffolk. November 7, 1995. - March 5, 1996.

Present: LIACOS, C.J., WILKINS, ABRAMS, O'CONNOR, & GREANEY, JJ.

*Arrest. Probable Cause. Bail. Constitutional Law,* Arrest, Probable cause. *Practice, Criminal,* Probable cause hearing, Dismissal, Interlocutory appeal. *Rules of Criminal Procedure.*

This court declined to adopt a per se prophylactic rule requiring the dismissal of criminal charges for a violation of the mandate of *Jenkins* v. *Chief Justice of the District Court Dep't,* 416 Mass. 221 (1993): a person's liberty interest in not being held in custody without probable cause, as distinct from a defendant's right to a fair trial, is protected by the availability of civil sanctions. [229-231]

A criminal matter, in which the defendant moved to dismiss the charges by reason of his having been held in custody after arrest for more than thirty hours without a bail hearing, arraignment, or probable cause determination, was remanded for further proceedings including written findings of fact as appropriate. [231-232]

COMPLAINT received and sworn to in the Boston Municipal Court Department on May 2, 1994.

The complaint was ordered dismissed by *Mark Hart Summerville,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Jane A. Sullivan,* Assistant District Attorney, for the Commonwealth.

*Dana Alan Curhan* (*Joshua D. Werner* with him) for the defendant.

LIACOS, C.J. At approximately 3 A.M. on May 1, 1994, two Boston police officers on patrol in the South End section of Boston were hailed by two citizens in an automobile. Those persons reported that they just had been threatened with a gun by the driver and passenger of another vehicle. The police officers promptly located this second vehicle and arrested its two occupants. The passenger (Whelen) had in his posses-

sion the weapon with which the threat was made. The defendant here, Jerard Viverito, was the driver. The police seized from Viverito a loaded .357 Magnum revolver and six rounds of ammunition.

The officers took the defendant and Whelen to the Area D4 police station and charged them.[1] On his arrest, Whelen called his father. At approximately 7 A.M. that morning a bail commissioner, John Flaherty, received a telephone call from the father.

The testimony as to what occurred after the call to Flaherty conflicts greatly. All that is clear from the record is that the defendant was not able to arrange bail until the morning of May 2, 1994. Thus the defendant remained in custody without a bail hearing, arraignment, or probable cause determination for over thirty hours. Law enforcement officials testified that a conflict of interest on the part of the bail commissioner resulted in the delay when no other person could be found to arrange release. The defendant's evidence tended to show that the police and the bail commissioner, acting intentionally or with deliberate indifference, caused the delay because one of the victims was the commissioner's stepson. The defendant moved before trial for a dismissal of the charges against him. A judge of the Boston Municipal Court Department conducted a two-day hearing. He then dismissed the charges. The Commonwealth appealed. We transferred the case here on our own motion.

The defendant notes that we recently determined that art. 14 of the Declaration of Rights of the Massachusetts Constitution mandates that a person arrested without a warrant must receive a prompt judicial determination of probable cause or be admitted to bail. *Jenkins* v. *Chief Justice of the District Court Dep't*, 416 Mass. 221, 237-241 (1993). The defendant complains that the police interfered with his ability to arrange bail. Counsel conceded at oral argument, and we agree, that absent destruction of exculpatory evidence or other impairment of a fair trial the delay did not prejudice the defendant. In essence, we are asked to lay down a per se prophylactic rule to enforce the mandate of *Jenkins*. We decline this invitation.

---

[1]The police charged Viverito with unlicensed carrying of a firearm, G. L. c. 269, § 10 (*a*) (1994 ed.), and illegal possession of ammunition, G. L. c. 269, § 10 (*h*) (1994 ed.). The record does not reveal the precise charges leveled against Whelen; he is not a party to this appeal.

A motion to dismiss criminal charges with prejudice is the most severe sanction that can be had when the government errs in a criminal case. Precluding trial of the accused based on some unauthorized or unconstitutional conduct on the part of wayward prosecutors, police, or other officers within the law enforcement or judicial system deprives the public of its ability to protect itself by punishing an offender. Other less drastic sanctions ordinarily are available. See generally *Commonwealth* v. *Hernandez*, 421 Mass. 272 (1995). As a result, we have set a high threshold that must be crossed before dismissal is appropriate. "Dismissal with prejudice is appropriate in cases of egregious prosecutorial misconduct or on a showing of prejudice (or a substantial threat thereof), or 'irremediable harm' to the defendant's opportunity to obtain a fair trial." *Id.* at 277. See also *id.* at 278-279 (noting that this court has never upheld dismissal in the absence of prejudice).

In several contexts similar to this one, we have stated that a defendant must show prejudice in order to justify dismissal of charges with prejudice. In *Commonwealth* v. *Imbruglia*, 377 Mass. 682 (1979), we held that preindictment delay could support dismissal of charges only in cases of intentional delay that produced actual prejudice. *Id.* at 691. We adopted the same test to justify dismissal when the Commonwealth fails to afford an arrestee an initial appearance at the first opportunity. See *Commonwealth* v. *Perito*, 417 Mass. 674, 681-682 (1994). See also Mass. R. Crim. P. 7 (a), as amended, 397 Mass. 1226 (1986). Just last term we required a showing of prejudice to support dismissal when police prevented an accused from obtaining an independent physical examination after an arrest for operating while under the influence. *Commonwealth* v. *Hampe*, 419 Mass. 514, 519-520 (1995) (denial of operator's right to independent physical examination, G. L. c. 263, § 5A [1994 ed.], often prejudicial because accused loses opportunity to obtain potentially exculpatory evidence). See *Commonwealth* v. *Priestley*, 419 Mass. 678, 681-682 (1995) (other overwhelming evidence of guilt can make violation of § 5A rights nonprejudicial).

A violation of the rule in *Jenkins*, or the implementing Trial Court Rule XI, Uniform Rule for Probable Cause Determinations for Persons Arrested Without a Warrant

(1995),[2] is this same type of delay that may violate statutory or constitutional rights but has little to do with the evidence to be adduced at trial. The defendant here argues that because delay which violates the *Jenkins* rule most often does not affect evidence, prejudice will almost never be shown and should therefore not be a prerequisite for dismissal. This argument confuses prejudice of the right to a fair trial with an interference with a liberty interest. See *Imbruglia, supra* at 691. Prejudice required for dismissal focuses on the subsequent trial and the interference with procedural rights therein. A *Jenkins* violation certainly interferes with rights — but it is instead the general liberty interest in not being held in custody without probable cause. When this interest, wholly separate from the underlying charges, is impermissibly infringed, remedies and enforcement tools such as civil sanctions can protect the right without the adverse consequences of a dismissal with prejudice.

With these principles we turn to the misconduct that the defendant alleges here. The motion judge correctly conducted an extensive hearing, at the end of which he ruled from the bench. The transcript indicates only that the judge believed there was a violation of *Jenkins*.[3] There are no additional findings of fact or discussion of law, as Mass. R. Crim. P. 15 (a) (4), 378 Mass. 882 (1979) (superseded by Mass. R. Crim. P. 15 [b] [2], *post* 1501 [1996] [effective Mar. 1, 1996]), invited. With conflicting testimony among witnesses at the motion hearing, we would ordinarily rely on the motion judge to find particular facts to aid in our application of legal standards to this case.[4] Without findings clearly stated

---

[2]Trial Court Rule XI became effective on July 1, 1994, two months after the defendant's arrest.

[3]We note, as did the motion judge, that *Jenkins* v. *Chief Justice of the Dist. Court Dep't*, 416 Mass. 221 (1993), itself set down a prospective rule. This case arose in the period between the *Jenkins* opinion and the effective date of Trial Court Rule XI, which implemented that decision. The motion judge here apparently believed that law enforcement officials should have complied with *Jenkins* because of the passage of time since that decision and the fact that the implementing rule had been promulgated, although it was not yet in effect.

[4]Findings pursuant to Mass. R. Crim. P. 15 (a) (4), 378 Mass. 882 (1979), were not required to be in writing. On the other hand, written findings and conclusions of law greatly aid an appellate court's review of trial court actions. See *Commonwealth* v. *Parham*, 390 Mass. 833, 836-837 (1984); *Com-*

in the transcript, we vacate the order of dismissal and remand the case for further proceedings consistent with the legal principles set forth above.

*So ordered.*

monwealth v. *Tempesta,* 361 Mass. 191, 191 n.1 (1972); *Commonwealth* v. *Cook,* 351 Mass. 231, 234, cert. denied, 385 U.S. 981 (1966). Cf. *Commonwealth* v. *Hawkesworth,* 405 Mass. 664, 669-670 (1989) (reasons for requiring independent fact finding by a judge rather than verbatim adoption of one party's proposed findings). This is especially true in reviewing drastic sanctions such as a dismissal with prejudice, for such cases are often very fact intensive. Appellate courts, of necessity, give deference to trial court findings of fact in such matters. Written findings are a critical link in maintaining that deference and effectively separating our consideration of purely legal issues from questions of fact. See, e.g., *Commonwealth* v. *Mahnke,* 368 Mass. 662, 666 (1975), cert. denied, 425 U.S. 959 (1976); *Commonwealth* v. *Tempesta, supra* at 193-194. Written findings also, like our writing of opinions, focus attention on the precise legal question at hand and the facts that are found to justify a particular remedy. Finally, *written fact finding can conserve judicial resources because it* often precludes relitigation. Memorialization of fact determinations can, when subsequent civil litigation arises, help make clear what was previously settled.