COMMONWEALTH vs. SANTO L. ARIAS.

No. 00-P-1710.

Plymouth. February 4, 2002. - September 11, 2002.

Present: DUFFLY, DREBEN, & TRAINOR, JJ.

*Narcotic Drugs. Controlled Substances. Practice, Criminal,* Postconviction relief, Complaint, Probable cause hearing. *District Court,* Probable cause hearing. *Bail. Evidence,* Opinion.

The judge in a criminal action did not err in denying the defendant's postconviction motion to correct the record, where the defendant did not comply with the requirement of Mass.R.Crim. P. 13(c), and where the denial did not create a substantial risk of a miscarriage of justice. [783-785]

In a criminal action, the judge did not err in denying the defendant's pretrial motion to dismiss the complaint, where no showing of probable cause was needed prior to the issuance of the complaint because the case was commenced by a warrantless arrest. [785-787]

At the trial of a criminal complaint charging possession of a controlled substance with intent to distribute, the judge erred in permitting a State police trooper to testify that drugs found during a search were "intended for distribution," but because there was no objection to the testimony, and because the officer carefully explained that distribution could be inferred from the method of packaging and the location of the drugs, the impermissible conclusion was not significantly more prejudicial than the explanation, which was proper, and did not create a substantial risk of a miscarriage of justice. [787-788]

COMPLAINT received and sworn to in the Brockton Division of the District Court Department on February 16, 1999.

The case was heard by *James F.X. Dinneen,* J., and a motion to correct the record, filed on January 9, 2001, was also heard by him.

*David A. Silverman* for the defendant.

*Mary Lee,* Assistant District Attorney, for the Commonwealth.

DREBEN, J. The defendant was convicted after a District Court bench trial on an amended complaint charging him with two narcotics violations, possession of a controlled substance with

intent to distribute, G. L. c. 94C, § 32A(*a*), and violation of § 32A within 1000 feet of a school, G. L. c. 94C, § 32J. In an effort to bolster his claim that his pretrial motion to dismiss the school zone charge had been erroneously denied, the defendant filed a postconviction motion to correct the record, seeking to have the trial judge rule (a) that the docket entry indicating that an application for a complaint had been filed was erroneous; and (b) that there was no record that he had been given a bail hearing or probable cause hearing of the kind, or within the time, required by *Jenkins* v. *Chief Justice of the Dist. Ct. Dept.*, 416 Mass. 221 (1993), and Trial Court Rule XI, Uniform Rule for Probable Cause Determinations for Persons Arrested Without a Warrant (1994) (Uniform Rule XI).[1]

The defendant challenges the denial of his motion to correct the record, the denial of his pretrial motion to dismiss, and the admission in evidence of an opinion of a police officer that the drugs found were "intended for . . . distribution." We affirm the defendant's convictions and the denial of his postconviction motion.

1. *Postconviction motion to correct the record.*[2] The defendant's two claims involving the record were first raised in the postconviction motion. Those claims are (1) that despite a docket entry to the contrary, there was no "application" for a complaint; and (2) that the defendant had no bail or probable cause hearing until February 16, although he was arrested on February 12. Because Mass.R.Crim.P. 13(c), 378 Mass. 871 (1979), requiring that such motions be brought before trial, was not complied with, these arguments are waived. In any event, the denial did not create a substantial risk of a miscarriage of justice.

While the defendant urges that Dist./Mun.Cts.R.Crim.P. 2(a) (1996), set forth in the margin,[3] was not followed, the record does not support his claim. The rule requires that prior to the is-

---

[1]The defendant was arrested on February 12, 1999. On February 16, 1999, the complaint issued, the defendant was arraigned and a bail hearing was held.

[2]The judge allowed the portion of the defendant's motion that requested a correction of the transcript in order to reflect the correct dates of the jury-waived trial.

[3]The rule states:

suance of a criminal complaint begun by warrantless arrest, the clerk-magistrate must obtain from the police department a "written statement describing the facts constituting the basis for the arrest." Here, the judge considered that the State police report, together with the booking sheet of the Brockton police department showing the defendant's arrest on the two charges, in effect had satisfied the rule. The State police report set forth in some detail that the defendant had been the target of a month-long narcotics investigation and that a search warrant had been obtained to search his car and his apartment. After drugs were found in both places, the report states, the defendant was taken to the Brockton police department, where he was booked and advised of his rights. In view of the report and the booking sheet, the rule requiring a written statement constituting the basis for the arrest was satisfied whether or not a formal "application" was on file. The judge did not err in refusing to change the docket entry.

There was also no error, let alone a substantial risk of a miscarriage of justice, in not changing the docket, which, by omission of any entry, already reflected the absence of a bail hearing or a showing of probable cause to arrest prior to February 16. Rather than a docketing mistake, the problem was the failure to have a prompt judicial determination of probable cause or to admit the defendant to bail within the requisite time period. See *Jenkins* v. *Chief Justice of the Dist. Ct. Dept.*, 416 Mass. at 238-241; *Commonwealth* v. *Viverito*, 422 Mass. 228, 230-231 (1996); Uniform Rule XI.[4]

That the defendant showed a *Jenkins* violation would not

---

"Prior to the issuance of a criminal complaint in a case commenced by warrantless arrest, the clerk-magistrate shall obtain from the police department responsible for the arrest a written statement describing the facts constituting the basis for the arrest. This requirement may be satisfied by providing to the clerk-magistrate a copy of the arresting officer's police report at the time the Application for Complaint is filed or by setting forth the statement in the space provided on the Application for Complaint, with an additional sheet or sheets attached to the Application as may be needed."

[4]In his motion to correct the record, the defendant stated that he was informed by an assistant clerk that it is the policy of the Brockton District Court clerk-magistrates not to hold a probable cause hearing if a defendant has been arrested pursuant to a search warrant. If that is the practice, it would seem to be counter to Uniform Rule XI.

have been enough to require dismissal even if the claim had been timely made. He must demonstrate prejudice in "the subsequent trial and the interference with procedural rights therein." *Commonwealth* v. *Viverito, supra* at 231. As the defendant did not raise this issue prior to trial when an evidentiary hearing could have been held, the judge correctly considered the claim to be untimely and to require no action. The defendant's assertion that he was prejudiced because the police did not measure the distance from the school to his home until much later, and that he would have been able to show that there was not probable cause for the school zone violation, is without merit. Not only would the police in all likelihood have taken the necessary measurements of the distance between the defendant's apartment and the school prior to any hearing, but the purported prejudice had "little to do with the evidence to be adduced at trial." *Ibid.*

2. *Pretrial motion to dismiss.* The defendant correctly claims that at the time of the issuance of the complaint, the clerk-magistrate was not presented with facts showing probable cause for the school zone violation. The police report made no mention of the fact that the defendant's apartment was within 1,000 feet of a school. However, contrary to the defendant's contention, neither Dist./Mun.Cts.R.Crim.P. 2(a), nor Standard 2:04 of the District Court Standards of Judicial Practice: The Complaint Procedure (1975) (standards), requires, in cases commenced by warrantless arrest, that probable cause for each of the charges be shown prior to the issuance of a criminal complaint. That showing is to be made at the probable cause determination, see Uniform Rule XI(d), not at the time of the issuance of the complaint. Although rule 2(a), see note 3, *supra*, requires police to show the *basis for the arrest*, there is nothing in the rule that requires, as does Dist./Mun.Cts.R.Crim.P. 2(b) (1996), applicable to cases not commenced by warrantless arrest, that "each police and civilian complainant shall, on the Application for Criminal Complaint, provide the information to support the *issuance of the complaint*" (emphasis supplied). See Smith, Criminal Practice & Procedure §§ 66.5, at 625 (2d ed. 1983 & Supp. 2002).

The standards set forth an even starker distinction between

the duties of a clerk-magistrate after an arrest and the duties in cases not involving an arrest.[5] As to the former, the commentary to Standard 2:04 states,

> "In the case of a person under arrest, it is not the Clerk's function to review whether there was in fact probable cause for the arrest, nor to judge whether the Commonwealth ultimately will fail in its prosecution of the case. Only the judge can review these matters when the accused is brought before [the judge]. The Clerk's function in arrest cases is largely administrative; it is designed primarily to insure prompt preparation of the Complaint for use in the courtroom."

Commentary to Standard 2:04 of the District Court Standards of

---

[5] In the case of an arrested person the application is termed "application for complaint." In the case where the person has not been arrested, the application is called an "application for issuance of process."

Standard 2:00 of the District Court Standards of Judicial Practice: The Complaint Procedure (1975) states:

"Purpose of the Complaint Procedure in Arrest Cases. IN CASES WHERE AN ARREST HAS BEEN MADE, THE PRIMARY OBJECTIVE OF THE COMPLAINT PROCEDURE IS TO PERMIT THE POLICE OFFICER TO BRING THE ARRESTEE BEFORE THE JUDGE WITH THE LEAST DELAY POSSIBLE."

The commentary to Standard 2:00 in relevant part sets forth:

"It is necessary to distinguish — and these standards do distinguish — between the *Application for Issuance of Process*, dealt with in standards 3:00 through 3:26, and the *Application for Complaint*, dealt with in standards 2:00 through 2:04. An Application for Issuance of Process may be presented by lay persons or police officers, and requests the authority of the court to make an arrest or order a summons to issue. It requires the magistrate to exercise a good deal of discretion in deciding whether to authorize the commencement of a criminal proceeding.

"The Application for Complaint, on the other hand, does not call on the magistrate to exercise substantial discretion. It does not call on the court to issue process, the arrest already being an accomplished fact. Nor does it require the Clerk or Assistant Clerk to approve the validity of the arrest or assess the potential strength of the prosecution. The purpose of the Application is simply to capture case information necessary to prepare the documents needed to proceed in the courtroom. It is merely an aid to the court in facilitating the preparation of the Complaint.

"The Complaint procedure in arrest cases does not include the probable cause determination discussed by the Supreme Court of the United States in *Gerstein* v. *Pugh*, [420 U.S. 103, 113-114] (1975)."

Judicial Practice: The Complaint Procedure (1975). In cases not involving an arrest, on the other hand, the commentary to Standard 3:00 states that the magistrate's role is "to determine whether probable cause exists for issuing process requiring the accused to appear to answer a criminal charge." Commentary to Standard 3:00 of the District Court Standards of Judicial Practice: The Complaint Procedure (1975). See *Commonwealth v. DiBennadetto*, 436 Mass. 310, 314 (2002), citing commentary 1 to Standard 3:17 of the District Court Standards of Judicial Practice: The Complaint Procedure (1975).

While Dist./Mun.Cts.R.Crim.P. 2(a) requires a written statement describing the facts constituting the basis for the arrest, and the standards seem to require only oral testimony, see Standards 2:03 and 2:04 of the District Court Standards of Judicial Practice: The Complaint Procedure (1975), nothing in the rule[6] suggests that the long-standing distinction in the function of the magistrate in arrest and nonarrest cases has changed so as to require him or her to find probable cause to arrest in arrest cases. In any event, the clerk-magistrate was here provided with a description of facts showing probable cause to arrest for the primary narcotics violation. More was not required. There was no error in denying the motion to dismiss. Contrary to the defendant's contention, no showing of probable cause of the school zone violation was needed.

3. *Opinion evidence.* The defendant's final contention is that the trial judge erroneously permitted a State police trooper to testify that the drugs the search uncovered were "intended for . . . distribution." The testimony should not have taken this conclusive form and should have been limited to an explanation of the methods and practices of distribution, see *Commonwealth v. Tanner*, 45 Mass. App. Ct. 576, 581 (1998), or, at most, the officer should have been permitted to testify that the drugs as they were packaged and located were consistent with distribution. See, e.g., *Commonwealth v. Lopez, ante* 741, 745-746 (2002). Here, however, because there was no objection to

---

[6]The rule, which was promulgated subsequent to the standards, uses the term "complaint" in both warrantless arrest cases and in cases not involving an arrest.

the testimony, and because the officer carefully explained that distribution could be inferred from the method of packaging and the location of the drugs, testimony generally admissible, see *Commonwealth* v. *Labitue*, 49 Mass. App. Ct. 913, 914 (2000), the conclusion was not significantly more prejudicial than the explanation and did not create a substantial risk of a miscarriage of justice.

*Judgment affirmed.*

*Order denying motion to correct record affirmed.*