Commonwealth *v.* Mason.

Commonwealth *vs.* Francis V. Mason.

Hampden. March 3, 2009. - May 21, 2009.

Present: Marshall, C.J., Ireland, Spina, Cowin, Cordy, Botsford, & Gants, JJ.

*Practice, Criminal,* Dismissal, Conduct of government agents.

A District Court judge erred in allowing a criminal defendant's pretrial motion to dismiss with prejudice criminal charges on the basis of egregious, deliberate, and intentional police misconduct, where the judge's findings provided no basis on which to conclude that the misconduct presented a substantial threat of prejudice, and where lesser sanctions were available. [877-879]

Complaint received and sworn to in the Westfield Division of the District Court Department on March 13, 2006.

A motion to dismiss was heard by *Philip A. Contant, J.*

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Michele A. Rooke* for the defendant.

*Thomas H. Townsend,* Assistant District Attorney, for the Commonwealth.

Ireland, J. The Commonwealth appeals from the allowance by a District Court judge of the defendant's pretrial motion to dismiss criminal charges on the basis of egregious, deliberate, and intentional, but nonprejudicial, police misconduct. We conclude that dismissal was not proper in the circumstances of this case, where lesser sanctions were available, and we vacate the dismissal and remand the matter to the District Court for further proceedings.

1. *Background.* We recite the essential facts found by the motion judge, reserving certain details for our discussion. On a Saturday afternoon in March, 2006, Granville police responded to a report that the defendant had assaulted three men with a pistol while they were operating all-terrain vehicles near the

boundary between the towns of Granville and Southwick. While speaking with the three men, the police observed the defendant and his girl friend nearby. The police chief, accompanied by several other officers and a State trooper, took a handgun from the defendant and arrested him. During the arrest, an oral exchange between the defendant and the police chief escalated into hostility. The defendant made a remark about a shooting by a police officer in another town in which the chief had been involved. Angered by the defendant's remark, the chief responded that he would see to it that the defendant would be held in the Hampden County jail in Ludlow and that a high bail would be set. As the exchange continued, the chief also stated that he was revoking the defendant's license to carry firearms. The defendant was then placed in a police cruiser. After the defendant had been taken from the scene, the police entered, without a warrant, onto the defendant's land where the assault was reported to have occurred and removed some evidence, including spent shell casings.

In accordance with the ordinary procedures followed by the Granville police, an officer transported the defendant to the State police barracks in Russell for booking and temporary detention before transferring him to the jail in Ludlow.[1] While at the barracks, the defendant made a telephone call to his girl friend and told her, mistakenly, that the amount of his bail was $200 and the total amount including the bail commissioner's fee would not exceed $300. After obtaining the funds, the girl friend drove to the barracks. In the meantime, a Granville police officer contacted, by telephone, the bail commissioner who was on call for the barracks. Without giving the defendant any opportunity to participate in the bail hearing, the commissioner set his bail at $1,000. The defendant was surprised when the State police informed him of the bail amount that had been set. He attempted to make a telephone call to his girl friend, but was unable to reach her. She arrived at the barracks shortly thereafter with $300, and was advised that the defendant could not be released because

---

[1]During booking, before his bail had been set, the defendant asked a State trooper what the bail amount would be, and the trooper suggested, as an estimate, that his bail would likely be around $200, plus a bail commissioner's fee.

his bail had been set at $1,000. The State police told her that she could post the $1,000 bail at the barracks up until 10 P.M., after which time the defendant would be transferred to the jail in Ludlow. She was not able to raise the funds that night, and she called the barracks sometime before 10 P.M. to tell the police that she would post the bail at the jail in Ludlow the following day before noontime.

Granville police then transported the defendant, along with paperwork from the Granville police and the State police indicating that the defendant's bail had been set at $1,000, to the jail.[2] When the defendant arrived at the jail, however, the accompanying paperwork given to the jail officials did not indicate that any bail had been set. The judge found that the Granville police deliberately withheld from the jail officials the two documents disclosing that the defendant's bail had been set, for the purpose of punishing the defendant for the remarks he made to the police chief while being arrested.[3] In accordance with their ordinary procedure for occasions when the jail receives a prisoner from another agency and the accompanying paperwork does not specify a bail amount, jail officials classified the defendant as having a "no bail" status.

The defendant's girl friend arrived at the jail shortly before noontime on the following day, Sunday, to post the defendant's bail. A jail official advised her that the defendant was being held on "no bail" status, and could not be released. She inquired further, prompting the jail officers to look into the defendant's bail status.[4] Eventually a jail officer advised her that the defendant would continue to be held on "no bail" status, that she

[2]The police chief prepared an application for a criminal complaint, as well as a three-page police report, which stated on the third page that the defendant's bail had been set at $1,000, and transmitted by facsimile the documents to the barracks. A State police trooper also completed, in part, a form intended to accompany the defendant to the county jail, which indicated the defendant's bail had been set at $1,000.

[3]The third page of the police report prepared by the Granville police chief and the transfer form that had been filled out by the State police trooper were missing.

[4]The judge found that during the time the defendant's girl friend was at the jail seeking to post the defendant's bail, a jail official made a telephone call to the bail commissioner who had set the defendant's bail the previous day. The bail commissioner explained to the official that she had set the defendant's

could not see him at that time, and that she should leave the jail.[5] The next day, Monday, the defendant was arraigned in the District Court on three charges of assault by means of a dangerous weapon (a pistol), in violation of G. L. c. 265, § 15B (*b*), and released on $1,000 cash bail posted by his girl friend.

Before trial, the defendant moved to dismiss the charges on the ground that the actions of the police prevented him from being released when his girl friend sought to post his bail, in violation of his State and Federal constitutional rights not to be deprived of liberty without due process, and that these actions amounted to prosecutorial misconduct.[6] After holding a five-day evidentiary hearing, the judge concluded that the police, by intentionally withholding the defendant's bail information from officials at the jail, had engaged in egregious misconduct that violated his State and Federal constitutional rights, as well as his statutory rights, and allowed the motion to dismiss.[7] The

---

bail at $1,000, and that the official should contact the bail commissioner who was "on call" for the jail. No attempt was made to contact that bail commissioner.

[5]The judge also found that the defendant made repeated entreaties of jail personnel as to why he had not been bailed out, explaining to the officers that he understood his bail to have been set at $1,000, and that he expected his girl friend to come and bail him out.

[6]The defendant also asserted as a basis for his motion to dismiss that his right to participate in a bail hearing, pursuant to G. L. c. 276, § 58, had been improperly denied. General Laws c. 276, § 58, provides, in pertinent part:

> "[A] bail commissioner . . . shall, when a person is held under arrest . . . without a warrant for an offense other than an offense punishable by death . . . hold a hearing in which the defendant and his counsel, if any, may participate and inquire into the case and shall admit such person to bail on his personal recognizance without surety unless said . . . bail commissioner . . . determines, in the exercise of [her] discretion, that such a release will not reasonably assure the appearance of the person before the court . . . ."

[7]The judge also concluded that the bail commissioner (1) erred in denying the defendant the opportunity to participate in a bail hearing, in violation of G. L. c. 276, § 58; (2) erroneously considered the seriousness of the charges and whether the defendant posed a threat to the community; and (3) abused her discretion in failing to admit the defendant to bail on personal recognizance. The judge further concluded that the officials at the jail violated the defendant's right to a prompt bail hearing when they failed to contact the bail commissioner who was on call for the jail after the defendant's girl friend sought to post his bail, and the bail commissioner who had set the defendant's bail advised them that his bail had already been set.

Commonwealth appealed. See G. L. c. 278, § 28E; Mass. R. Crim. P. 15, as appearing in 422 Mass. 1501 (1996). In an unpublished memorandum and order pursuant to its rule 1:28, the Appeals Court reversed, concluding that the egregious police misconduct was insufficient to support dismissal of the charges with prejudice where the misconduct did not present a serious threat of prejudice, and where lesser sanctions could have preserved the defendant's right to a fair trial. *Commonwealth* v. *Mason*, 72 Mass. App. Ct. 1102 (2008). We granted the defendant's application for further appellate review.

2. *Discussion.* Dismissal of criminal charges with prejudice is the most severe sanction that the court can impose in a criminal case to remedy misconduct on the part of the Commonwealth. *Commonwealth* v. *Viverito*, 422 Mass. 228, 230 (1996). "The dismissal of a criminal case is a remedy of last resort because it precludes a public trial and terminates criminal proceedings." *Commonwealth* v. *Cronk*, 396 Mass. 194, 198 (1985). "Absent egregious misconduct or at least a serious threat of prejudice, the remedy of dismissal infringes too severely on the public interest in bringing guilty persons to justice." *Commonwealth* v. *Cinelli*, 389 Mass. 197, 210, cert. denied, 464 U.S. 860 (1983).

Although our cases have suggested that nonprejudicial but egregious prosecutorial misconduct might in some circumstances warrant dismissal of criminal charges, see *Commonwealth* v. *Cronk*, *supra* at 199, and cases cited, we have never dismissed charges in such circumstances in the absence of prejudice. See *Commonwealth* v. *Lewin*, 405 Mass. 566, 586 (1989). In *Commonwealth* v. *Viverito*, *supra* at 228, where a judge dismissed a complaint after the defendant was held in custody for over thirty hours without a bail hearing, arraignment, or probable cause determination, we recognized that such a delay might violate a defendant's statutory or constitutional rights, but have little bearing on the evidence to be adduced at trial. *Id.* at 231. Distinguishing between prejudice affecting the right to a fair trial on the one hand and interference with a defendant's general liberty interest (in not being held in custody without probable cause) on the other, we said, "Prejudice required for dismissal focuses on the subsequent trial and the interference with procedural rights therein." *Id.* A defendant's general liberty interest can

be protected from improper infringement through remedies and enforcement tools such as civil sanctions rather than dismissal. *Id.* "Our emphasis has always been that any remedy should be tailored to cure the prejudice to the defendant. . . . Because judicial responses should be limited to truly remedial, and not punitive, measures, the absolute necessity for integrity in law enforcement recommends, in appropriate cases, recourse to civil remedies and departmental police discipline." *Commonwealth* v. *Hine*, 393 Mass. 564, 573 (1984).

Here, there is no question that the defendant was subjected to egregious police misconduct. The Commonwealth does not challenge the judge's findings, which were fully supported by the record, that the Granville police engaged in intentional, deliberate, and egregious misconduct that violated the defendant's State and Federal constitutional rights under the Fourteenth Amendment to the United States Constitution and art. 12 of the Declaration of Rights of the Massachusetts Constitution, as well as his statutory rights under G. L. c. 276, § 58. The defendant contends that dismissal was warranted on the basis of the egregious misconduct alone, relying on the disjunctive expression of the test for dismissal with prejudice as stated in *Commonwealth* v. *Cinelli*, *supra* at 210 (either egregious misconduct or a serious threat of prejudice). We disagree. Our decision in *Commonwealth* v. *Viverito*, *supra* at 230, applies to the circumstances of this case, requiring the defendant to show prejudice or a substantial threat thereof in order to justify the dismissal of the charges.[8]

Although the judge found that the defendant had not demonstrated actual prejudice to his defense as a result of the misconduct, he found that a substantial threat of prejudice nevertheless existed. In particular, the judge found that the defendant had been prevented from "promptly returning to his own property, the scene of the alleged crimes, to observe, gather and preserve evidence at the scene, and/or to observe and note, in a timely

---

[8]The defendant's argument that the egregious police misconduct in this case gives rise to a presumption of prejudice is similarly unavailing. See, e.g., *Commonwealth* v. *Fontaine*, 402 Mass. 491, 498 (1988) (affirming dismissal of some charges against defendant where prosecutorial misconduct involved merits of defendant's case); *Commonwealth* v. *Cronk*, 396 Mass. 194, 201 (1985) (holding that Commonwealth's untimely compliance with discovery orders not sufficiently egregious to give rise to presumptive prejudice).

fashion what damage or disturbance the police may have caused to the scene/evidence during their warrantless entry and search of same." This was clear error. The warrantless entry onto and search of the defendant's property occurred after the defendant was arrested on Saturday, prior to the period of time when the defendant was unlawfully detained without bail, i.e., between the arrival of his girl friend at the jail on Sunday and his release on bail at his arraignment the following day. The judge's findings provide no basis on which to conclude that there was a material difference in what the defendant could have observed if he had been released on Sunday and what he was actually able to observe on Monday.

The egregious misconduct by the police here did not present a substantial threat of prejudice sufficient to support dismissal of the charges without prejudice. Alternative, lesser sanctions are available to protect the defendant's right to a fair trial, and if appropriate, recourse to civil remedies and departmental police discipline is also available. *Commonwealth* v. *Hine, supra* at 573. If, for example, the defendant had been able to show that the police misconduct had compromised his ability to challenge evidence collected by the police, the evidence could have been excluded at trial. Additional steps also could have been taken to ensure that the Commonwealth did not benefit from the wrongdoing by the police, such as allowing counsel for the defendant to establish, if called as prosecution witnesses, the possible bias of any officers who engaged in the misconduct.

3. *Conclusion.* For the foregoing reasons, we vacate the dismissal and remand the case for further proceedings consistent with this decision.

*So ordered.*