## COMMONWEALTH *vs.* REGINALD A. GARDNER.

Suffolk. October 10, 2013. - March 5, 2014.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Controlled Substances. Constitutional Law,* Conduct of government agents. *Due Process of Law,* Disclosure of evidence, Presumption. *Evidence,* Certificate of drug analysis, Exculpatory, Disclosure of evidence, Presumptions and burden of proof. *Practice, Criminal,* Dismissal, Disclosure of evidence, Conduct of government agents, Presumptions and burden of proof.

This court vacated the dismissal of a criminal complaint by a judge in the Boston Municipal Court Department and remanded the matter for further proceedings, where the defendant failed to show that a chemist at a State drug laboratory (who was neither the primary nor the secondary chemist on the four certificates of drug analysis in the defendant's case, but only a notary public on one certificate that was not the subject of any charge against the defendant) might have tampered with the evidence in his case, and where there was no evidence that the Commonwealth had withheld or failed to disclose existing exculpatory evidence. [368-370]

COMPLAINT received and sworn to in the Central Division of the Boston Municipal Court Department on October 26, 2011.

A motion to dismiss, filed on December 7, 2012, was heard by *Franco J. Gobourne,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Vincent DeMore,* Assistant District Attorney, for the Commonwealth.

*Rebecca A. Jacobstein* for the defendant.

SPINA, J. In June, 2011, allegations of misconduct at the William A. Hinton State Laboratory Institute in the Jamaica Plain section of Boston surfaced regarding work performed by Annie Dookhan, a chemist who had been employed in the forensic drug laboratory (Hinton drug lab) since November, 2003. Based on investigations conducted by the Department of Public Health and the State police, Dookhan was indicted on multiple counts

of evidence tampering and obstruction of justice, as well as on at least one count of perjury and one count of falsely claiming to hold a graduate degree, all relating to her handling and testing of samples at the Hinton drug lab. See *Commonwealth* v. *Scott, ante* 336, 337 (2014); *Commonwealth* v. *Charles*, 466 Mass. 63, 64 (2013). Dookhan resigned from her position, effective March 9, 2012, and the William A. Hinton State Laboratory Institute was closed on August 30, 2012. The present case is one of several that has arisen as a consequence of the testing of drug evidence by Dookhan at that facility.[1]

On October 26, 2011, a criminal complaint issued from the Central Division of the Boston Municipal Court Department charging the defendant, Reginald A. Gardner, with distribution of a class B controlled substance ("crack" cocaine), G. L. c. 94C, § 32A (*a*); possession of a class B controlled substance with intent to distribute, G. L. c. 94C, § 32A (*a*); and commission of each of these offenses within a school zone, G. L. c. 94C, § 32J. The defendant filed a motion to suppress the evidence, which was denied. On December 7, 2012, the defendant filed a motion to dismiss the criminal complaint on the ground that the certificates of drug analysis (drug certificates), showing that the substances seized from him were cocaine, had been tainted by Dookhan's egregious misconduct, which purportedly affected thousands of cases handled at the Hinton drug lab and irretrievably prejudiced the defendant. Following a hearing on December 13, 2012, a judge allowed the motion and dismissed the complaint.[2] The Commonwealth filed an appeal pursuant to Mass. R. Crim. P. 15 (a) (1), as appearing in 422 Mass. 1501 (1996). We granted the Commonwealth's application

---

[1]Since this case was argued, Dookhan has pleaded guilty to numerous criminal charges, including evidence tampering, perjury, and witness intimidation.

[2]Prior to filing his motion to dismiss, the defendant filed two motions for discovery. The first one, filed on December 30, 2011, required the Commonwealth to provide, if in its possession, "[a]ny exculpatory information in the hands of the police or other agencies." A judge in the Boston Municipal Court allowed the motion. The second one, filed on October 24, 2012, requested specific information pertaining to the Hinton drug lab. The judge took no action on this motion before ruling on the defendant's motion to dismiss. Nonetheless, it appears that the Commonwealth provided the defendant with discovery materials on November 19, 2012. The Commonwealth then provided the

for direct appellate review, and now conclude that dismissal was not proper in the circumstances of this case.

1. *Background.* During the evening of October 25, 2011, Officer Gino Rodrigues engaged in an undercover drug transaction with three men near Peters Park in the South End section of Boston. Once the transaction was completed, members of the Boston police department's drug control unit, who had been conducting mobile surveillance, broadcast a description of the automobile in which one of the men was observed leaving the scene. Boston police officers stopped the vehicle; Officer James Stoddard approached the driver's side door, and he observed the defendant in the driver's seat. Three other individuals were in the vehicle. Officer Stoddard asked the defendant to step out of the vehicle and then noticed a bag of what he believed to be crack cocaine on the floor of the vehicle, next to the defendant's feet. The defendant was arrested and transported to the police station, where he was subjected to a strip search. Officers recovered from the cleft of the defendant's buttocks a plastic bag containing four individual baggies of what appeared to be crack cocaine. All of the substances were sent to the Hinton drug lab for testing. The substances that had been seized from the defendant were analyzed on December 27, 2011, and determined to be cocaine. The first signature on each of the four drug certificates, on the line labeled "Assistant Analyst," was that of Daniela Frasca, and the second signature on that same line was that of Daniel Renczkowski.[3]

The Hinton drug lab also had received for testing a green vegetable matter that had been seized from another individual who was arrested as part of the same drug transaction involving the defendant. The green vegetable matter was determined to be marijuana. The first and only signature on the certificate of drug analysis, on the line labeled "Assistant Analyst," was Daniela Frasca. The notary public on this one certificate was Dookhan.[4]

---

defendant with additional discovery materials on December 13, 2012, including a 101-page discovery packet produced by the office of the Attorney General, and a 446-page discovery packet produced by the Department of Public Health (department).

[3]The notary public on these four certificates of drug analysis (drug certificates) was Hevis Lleshi.

[4]The following statement appears on the drug certificate directly above the line where the signature of Dookhan appears as notary public: "On this day,

In support of his motion to dismiss the criminal complaint, the defendant relied on media reports detailing allegations that Dookhan had tampered with drug evidence that was sent to the Hinton drug lab for analysis. Notwithstanding the fact that the substances seized from the defendant were analyzed by two other chemists, Frasca and Renczkowski, the defendant asserted that discovery materials provided by the Commonwealth mentioned that Dookhan "had tampered with the[] materials" of these two chemists.[5] Defense counsel acknowledged that, although he did not have any specific information that Dookhan had tampered with the evidence in this case, the mere possibility of tampering warranted dismissal of the criminal complaint, particularly where Dookhan was at the Hinton drug lab "in some capacity" until early 2012.[6] Moreover, the Commonwealth was unable to provide any assurances that the defendant's drug certificates were not tainted. In the defendant's view, the egregious misconduct by Dookhan, which should be imputed to the Commonwealth, irretrievably prejudiced the defendant, necessitating the allowance of his motion to dismiss.

The Commonwealth argued that dismissal was not warranted because Dookhan had not analyzed the substances seized from the defendant. Rather, the purported drugs had been analyzed

December 28th, 2011, before me, the undersigned notary public, personally appeared the above signed subscriber(s), having proved to me through Department of Public Health documentation to be the person(s) whose name(s) is/are signed on this certificate and to be (an) assistant analyst(s) of the Department of Public Health, and who swore to me that the contents of this document are truthful and accurate to the best of his/her/their knowledge and belief."

[5]During an interview with State police Detective Lieutenant Robert M. Irwin on August 21, 2012, Renczkowski stated that sometime in April or May, 2011, Dookhan improperly put Renczkowski's initials on a "control sheet," indicating that the information that had been written thereon by Dookhan, as the primary chemist, was correct. Renczkowski further stated that, prior to being alerted about the matter, he had not seen this control sheet, and that Dookhan had forged his initials on it. During an interview with Detective Lieutenant Irwin on August 28, 2012, Frasca did not mention that Dookhan had interfered or tampered with her work at the Hinton drug lab.

[6]According to a written report from the department, prepared after a comprehensive internal analysis of the policies, procedures, leadership, and infrastructure of the Hinton drug lab, Dookhan was relieved of her duties there as of June 21, 2011, and she was reassigned to perform administrative tasks outside the Hinton drug lab.

by Frasca and Renczkowski, who had not been implicated in any misconduct. The Commonwealth conceded that it was not able to prove with certainty that Dookhan had not tampered with this evidence, stating that, in all likelihood, it never would have such proof. However, the Commonwealth did provide the defendant with several hundred pages of discovery materials pertaining to the ongoing investigation of the Hinton drug lab, which could shed light on Dookhan's activities during the time that the defendant's samples were analyzed. See note 2, *supra.* In the Commonwealth's view, dismissal of the criminal complaint improperly infringed on "the public interest in bringing guilty persons to justice." *Commonwealth* v. *Mason*, 453 Mass. 873, 877 (2009), quoting *Commonwealth* v. *Cinelli*, 389 Mass. 197, 210, cert. denied, 464 U.S. 860 (1983).

During his consideration of the defendant's motion, the judge pointed out that defense counsel had not provided any positive evidence to support his allegation that Dookhan had been involved in the analysis of the substances seized from the defendant. Nonetheless, given the allegations of wrongdoing at the Hinton drug lab, the mere fact that Dookhan was there during the relevant time period called into question the veracity of the drug certificates. The judge stated that the Commonwealth had the burden of providing exculpatory evidence to the defendant pursuant to Mass. R. Crim. P. 14, as amended, 444 Mass. 1501 (2005), and that it either had been unable or unwilling to provide this evidence due to the ongoing investigation of the Hinton drug lab. In the judge's view, the Commonwealth had significantly prejudiced the defendant, particularly where he already had been held in custody for fourteen months and where defense counsel would need additional time to consider discovery materials.[7] Consequently, in the interests of justice, the judge concluded that the criminal complaint should be dismissed.[8]

___

[7]It is unclear from the record exactly why the defendant remained in jail for fourteen months. The judge expressly recognized that it was not all due to the Commonwealth's lack of prosecution. We note that on July 19, 2012, the defendant was indicted in the Superior Court on two counts of assault by means of a dangerous weapon, G. L. c. 265, § 15B (*b*), and one count of assault and battery, G. L. c. 265, § 13A (*a*). His bail was set at $5,000 cash or $50,000 surety. According to the Commonwealth, that matter remains open.

[8]In his order allowing the defendant's motion to dismiss, the judge did not

2. *Standard of review.* "After the issuance of a [criminal] complaint, a motion to dismiss will lie for a failure to present sufficient evidence to the clerk-magistrate (or judge), see *Commonwealth* v. *McCarthy*, 385 Mass. 160 (1982), for a violation of the integrity of the proceeding, see *Commonwealth* v. *O'Dell*, 392 Mass. 445 (1984), or for any other challenge to the validity of the complaint." *Commonwealth* v. *DiBennadetto*, 436 Mass. 310, 313 (2002). Where a judge dismisses a criminal complaint without prejudice, the judge's decision shall be upheld absent an abuse of discretion. *Commonwealth* v. *Anderson*, 402 Mass. 576, 579 (1988). The judge's subsidiary findings of fact are accepted unless clearly erroneous. *Commonwealth* v. *Washington W.*, 462 Mass. 204, 213 (2012).

3. *Discussion.* In this appeal, the Commonwealth contends that dismissal of the criminal complaint was unwarranted where the defendant failed to show that Dookhan might have tampered with the evidence in his case and where there was no evidence that the Commonwealth had withheld or failed to disclose existing exculpatory evidence. We agree.

Dismissal of a criminal complaint is the most severe sanction that a court can impose to remedy misconduct on the part of the Commonwealth. *Commonwealth* v. *Viverito*, 422 Mass. 228, 230 (1996). "The dismissal of a criminal case is a remedy of last resort because it precludes a public trial and terminates criminal proceedings." *Commonwealth* v. *Cronk*, 396 Mass. 194, 198 (1985). "Absent egregious misconduct or at least a serious threat of prejudice, the remedy of dismissal infringes too severely on the public interest in bringing guilty persons to justice." *Cinelli*, 389 Mass. at 210. See *Viverito, supra* ("Precluding trial of the accused based on some unauthorized or unconstitutional conduct on the part of wayward prosecutors, police, or other officers within the law enforcement or judicial system deprives the public of its ability to protect itself by punishing an offender"). The burden is on a defendant to demonstrate why the dismissal of criminal charges is warranted.

indicate whether the dismissal was "with prejudice" or "without prejudice." Given that the defendant specifically requested "a dismissal without prejudice" in his memorandum of law in support of his motion to dismiss, we shall assume that this is the type of order that the judge entered.

See *id.* See also *Commonwealth* v. *Lewin,* 405 Mass. 566, 585 (1989); *Commonwealth* v. *Best,* 381 Mass. 472, 484 (1980); *Commonwealth* v. *Geoghegan,* 12 Mass. App. Ct. 575, 576-577 (1981). The threshold to be crossed before dismissal is appropriate is high. *Viverito, supra.*

The present appeal is guided by our opinion today in *Scott, supra.* In that case, which arose in the context of a motion to withdraw a guilty plea, this court held that in light of Dookhan's guilty pleas and the information gathered in the course of the investigations into her misconduct, and where Dookhan had signed a drug certificate as either the primary or secondary chemist, a defendant is entitled to a conclusive presumption that Dookhan's misconduct occurred in his case, that it was egregious, and that it was attributable to the Commonwealth. *Id.* However, we pointed out that there was no suggestion in the investigative reports on the Hinton drug lab that Dookhan's misconduct extended beyond cases in which she served as either the primary or the secondary analyst. *Id.* at 352 n.8. More specifically, the record did not indicate that Dookhan engaged in any wrongdoing in cases where she merely served as a notary public and certified the signatures of other chemists on drug certificates. *Id.* As a consequence, our holding in *Scott* did not extend to cases in which Dookhan only signed a drug certificate in her capacity as a notary public. See *id.*

Here, Dookhan was neither the primary nor the secondary chemist on the four drug certificates. Her remote and tangential relationship to this case was only that of notary public on a certificate of drug analysis for marijuana that was not the subject of any charge against the defendant but had been seized from another individual who was arrested as part of the same drug transaction involving the defendant. Contrary to the judge's finding, the Commonwealth did provide the defendant with several hundred pages of then-available discovery materials pertaining to the ongoing investigation of the Hinton drug lab, but in light of our reasoning in *Scott,* such materials would not have materially aided the defense. Cf. *Commonwealth* v. *Tucceri,* 412 Mass. 401, 404-405 (1992) (discussing government's obligation to disclose exculpatory evidence); Mass. R. Crim. P. 14 (a) (1) (A) (iii), as amended, 444 Mass. 1501 (2005). We

conclude that the defendant has failed to satisfy his heavy burden of demonstrating that, in the particular circumstances of this case, dismissal of the criminal complaint was warranted.

4. *Conclusion.* The judgment of dismissal is vacated, and the case is remanded to the Boston Municipal Court for further proceedings consistent with this opinion.[9]

*So ordered.*

---

[9]If the judge has concerns about the amount of time the defendant already has spent in custody on the pending drug charges, he can revisit the matter of bail.