COMMONWEALTH *vs.* GEORGE D. PERROT.

No. 93-P-845.

Hampden. June 16, 1994. - May 3, 1995.

Present: ARMSTRONG, JACOBS, & GILLERMAN, JJ.

*Practice, Criminal,* Conduct of prosecutor, Dismissal. *Due Process of Law,*
    Conduct of prosecutor.

Discussion of cases setting forth the circumstances under which the appro-
    priate sanction for prosecutorial misconduct is dismissal of criminal
    charges. [480-481]
Egregious misconduct of a district attorney who, after the fact of the de-
    fendant's conviction, fabricated a written, witnessed "confession" of the
    defendant, did not warrant dismissal of the charges where the Com-
    monwealth sustained its burden of showing that no prejudice to the de-
    fendant resulted. [482]
At the retrial of a criminal case the judge correctly excluded evidence of
    prosecutorial misconduct where it was irrelevant to the issues to be
    tried. [482]

INDICTMENTS found and returned in the Superior Court
Department on December 16, 1985.

Following review by the Supreme Judicial Court, 407
Mass. 539 (1990), a motion to dismiss was heard by *John F.*
*Moriarty,* J., and the case was tried before *William W.*
*Simons,* J.

*Kenneth I. Seiger* for the defendant.

*Judith Ellen Pietras,* Assistant District Attorney, for the
Commonwealth.

ARMSTRONG, J. Following reversal of the defendant's con-
victions in *Commonwealth* v. *Perrot,* 407 Mass. 539 (1990),
the defendant was again convicted of the same offenses:
armed robbery, aggravated rape, burglary and assault in a
dwelling, burglary, and indecent assault and battery. He ap-
peals, raising as the principal issue the denial of his pretrial

motion to dismiss the indictments due to prosecutorial misconduct.

It is best to proceed chronologically, beginning with the original convictions on December 14, 1987. The various indictments arose out of two housebreaks in Springfield on November 30, 1985. In a statement he had signed at the police station the night of his arrest, the defendant admitted breaking into the two houses and, in one of them, stealing a purse.[1] No mention was made in this statement of other offenses allegedly committed during the breaks, including the rape of an elderly woman who lived alone in one of the two houses, and the defendant orally denied such charges.

Shortly after the defendant's original convictions, the assistant district attorney who had prosecuted his cases, in an overzealous and seriously misguided scheme to assist the police in solving another, earlier housebreak, authored and forged the defendant's name to a bogus postconviction confession, purporting to make a clean breast of his involvement in all aspects of the two housebreaks for which he had been convicted and, in addition, the earlier, unsolved housebreak. The bogus confession implicated two close friends of the defendant, who the police suspected, but could not prove, had perpetrated the earlier housebreak. The assistant district attorney forged as well the signature of Sergeant Thomas M. Kelly of the Springfield police department, as a purported witness to the confession. Thus armed with the forged confession, he interrogated the two friends, using the document in an attempt to coerce their own confessions; but neither confessed, and the assistant district attorney abandoned the scheme, leaving the forged confession in the defendant's file.

None of this was known at the time the defendant's appeal was heard in the Supreme Judicial Court. The appeal resulted in a reversal of the convictions due to the introduction in evidence of a stolen purse, the location of which the defendant had disclosed in a statement obtained in violation of his right to counsel. (The circumstances, as well as the evi-

---

[1] The text of the partial confession appears in 407 Mass. at 544.

dence at the trial, are set out in detail in that decision, 407 Mass. 539.)

By the time of the retrial, the assistant district attorney who had tried the case had left the district attorney's office, and the retrial was assigned to Assistant District Attorney Elizabeth Dunphy Farris. Going through the file, she ran across the sweeping (but forged) confession, which she naturally took to be legitimate. Indeed, discussing the case with Sergeant Kelly, she predicted that trying the case should be relatively easy, given the confession. This Sergeant Kelly took as a reference to the legitimate, partial confession.[2] At a later point in trial preparation, Sergeant Kelly reviewed the file, found the bogus confession, realized that, despite what appeared to be his signature, he had not witnessed any such confession, and promptly reported that fact to Assistant District Attorney Farris. The bogus confession and the scheme unravelled, and she and Assistant District Attorney Elizabeth G. Dineen, who had handled the earlier appeal, took the honorable course of immediately making full disclosure of the scheme to the defendant's attorney, who filed a motion to dismiss based on prosecutorial misconduct.

The motion judge denied the motion and filed comprehensive findings and rulings, which we adopt.[3] In a series of re-

---

[2]See note 1, *supra*, and accompanying text.

[3]The motion judge's memorandum stated in part:

"The tactics employed by [the assistant district attorney who forged the confession] were, in my opinion, unethical and unprofessional if not unlawful. I do not consider them to be acceptable tactics for police officers, but much less so for a prosecuting attorney and member of the bar. To attempt to intimidate a suspect into making a statement incriminating either himself or some other person by the use of a forged confession is to invite discredit of and disrespect for the entire law enforcement effort.

"The callousness of his action is aggravated by the fact that [the assistant district attorney] put the forged confession in the file and left it there. If for any reason Sergeant Kelly had not been available when the cases against Perrot were being prepared for retrial, it is quite conceivable that it might have been used as evidence at the new trial. Leaving such a document in the file when the cases were still under appeal was negligence at best.

"It does not follow, however, that Perrot is entitled to a dismissal of his indictments on the basis of [the assistant district attorney's] tactics. The forged confession was not intended to be and never was used against him

cent decisions concerning prosecutorial misconduct, the guidelines concerning dismissal have become clear. Misconduct that causes irremediable prejudice to the defendant is ground for dismissal. *Commonwealth* v. *Lam Hue To*, 391 Mass. 301, 314 (1984). "Prosecutorial misconduct that is egregious, deliberate, and intentional, or that results in a violation of constitutional rights may give rise to presumptive prejudice," *Commonwealth* v. *Cronk*, 396 Mass. 194, 198-199 (1985), casting the burden on the Commonwealth to show that, in fact, no prejudice resulted, or that its harm can be offset. The Supreme Judicial Court "has declined to adopt a per se rule mandating dismissal," *Commonwealth* v. *Fontaine*, 402 Mass. 491, 498 (1988), adopting instead a balancing test that weighs "the rights of defendants . . . against the necessity for preserving society's interest in the administration of justice." *Commonwealth* v. *Cronk*, 396 Mass. at 199. "Absent egregious misconduct or at least a serious threat of prejudice, the remedy of dismissal infringes too severely on the public interest in bringing guilty persons to justice." *Ibid.*, quoting from *Commonwealth* v. *Light*, 394 Mass. 112, 116 (1985) (Liacos, J., dissenting). While reserving the possibility of dismissal for particularly egregious cases of misconduct where no other sanction but dismissal is available, *Commonwealth* v. *Lewin*, 405 Mass. 566, 586 (1989), the Supreme Judicial Court has not in fact approved that course. We are aware of only one case in which the sanction of dismissal was deemed appropriate, *Commonwealth* v. *Manning*, 373 Mass. 438, 444 (1977), a case where the conduct posed a threat to the right of counsel. See *Commonwealth* v. *Lewin*, 405 Mass. at 585-587 n.13.

---

at trial, and it did not succeed in uncovering or inducing any evidence or testimony that could be used against him. He has not suffered any prejudice as a result of [the assistant district attorney's] tactics, however unworthy those tactics may have been.

"This is not a case in which society should punish itself by dismissing indictments charging a defendant with very serious crimes. . . . The proper remedy in this case is to refer the matter to the Board of Bar Overseers for whatever action that Board may find to be appropriate. That will be done."

In the present case, the conduct of the original assistant district attorney was egregious, but the Commonwealth sustained its burden of showing that no harm resulted to the defendant. Indeed, the misconduct was not directed at the defendant but rather at two of his friends, who, if they had confessed, might have been in a position to seek dismissal of any resulting charges. The potential harm to the defendant was eliminated when Sergeant Kelly spotted the forgery; that, coupled with the actions of the successor assistant district attorney, also eliminated any reliance on the bogus confession. With an absence of prejudice, the appropriate sanction was that followed by the judge, a report of the conduct of the attorney, who is no longer an assistant district attorney, to the Board of Bar Overseers for appropriate action.[4]

There was also no error in the trial judge's allowance of the Commonwealth's motion in limine to avoid the defendant's introduction in the second trial of the unfortunate but, as it worked out, unsuccessful scheme. It did not have even tangential relevance to the evidence on which the Commonwealth was to rely; it suggested no shortcoming in the police investigation of the defendant's case. Contrast *Commonwealth* v. *Bowden*, 379 Mass. 472, 485-486 (1980). See *Commonwealth* v. *Flanagan*, 20 Mass. App. Ct. 472, 476 (1985).

The other issues raised by the defendant are without merit and warrant no discussion.

*Judgments affirmed.*

---

[4]Disciplinary proceedings before the board of bar overseers resulted in public censure of the attorney. See Matter of Bloom, SJC No. 93-78BD (Dec. 16, 1993).