## Commonwealth *vs.* Dennis L. Teixeira.

No. 08-P-696.

Middlesex. April 7, 2009. - January 12, 2010.

Present: Duffly, Brown, & McHugh, JJ.

*Practice, Criminal,* Conduct of government agents, Dismissal, New trial. *Constitutional Law,* Conduct of government agents.

This court concluded that remand of a criminal matter for further findings and reconsideration was essential for the proper disposition of the defendant's motion for a mistrial, which was premised on egregious police misconduct stemming from an encounter that took place the day before the trial began between the defendant and a police officer who was the uncle of a Commonwealth witness, where a District Court judge denied the motion without stating a reason therefor; for the same reason, remand was essential for proper disposition of the defendant's motion to dismiss the complaint premised on the same ground of police misconduct, where the judge denied the motion following a posttrial evidentiary hearing, but did not make sufficient findings to determine whether the Commonwealth had met its burden of showing that the police misconduct did not interfere with the defendant's right to testify at trial. [104-110] Brown, J., dissenting.

Complaint received and sworn to in the Cambridge Division of the District Court Department on December 26, 2006.

A motion to dismiss was heard by *Michele B. Hogan,* J., and the case was tried before her.

*Brownlow M. Speer,* Committee for Public Counsel Services (*Paul J. McManus,* Committee for Public Counsel Services, with him) for the defendant.

*Kate M. Kleimola,* Assistant District Attorney, for the Commonwealth.

McHugh, J. The defendant was convicted by a District Court jury of malicious destruction of property with a value less than $250, G. L. c. 266, § 127,[1] and intimidation of a witness, G. L.

---

[1]The defendant was charged with malicious destruction of property with a value of $250 or greater and convicted of the lesser included offense.

c. 268, § 13B(1). On appeal, he claims that his motion for a mistrial and his motion to dismiss the charges were improperly denied.

*Background.* Based on the evidence presented by the Commonwealth at trial, the jury could have found as follows. At approximately 7:00 P.M. on December 23, 2006, the victim, who had known the defendant for several months, picked him up at his home in Cambridge. They drove around for a while, had dinner, and then went to a local bar. At approximately 2:00 A.M., they left the bar accompanied by two of the victim's friends, Reananne Donofrio, about whom we shall have more to say later, and Vanessa Seco. Shortly thereafter, an argument between the victim and the defendant broke out in the victim's car as she drove the defendant home.

As the confrontation escalated, the defendant punched the victim, grabbed her car keys, and got out of the car. The victim attempted to use her mobile telephone to call police but the defendant grabbed the telephone and smashed it.[2] Eventually, the victim and her companions got out of the car and persuaded the defendant to return the keys. The three women then got back into the car and drove off. The victim contacted the Cambridge police shortly thereafter and reported the incident. Charges ensued and a trial followed.

After the trial began, the defendant filed a motion for a mistrial and a motion to dismiss the complaint on the ground of egregious police misconduct. The misconduct claim stemmed from an encounter between the defendant and Cambridge police detective Kevin Donofrio, Reananne Donofrio's uncle, the day before the trial began. The defendant's attorney also informed the judge, orally and by affidavit, that he had advised the defendant to testify in his own defense but the defendant declined to do so because the encounter with Kevin Donofrio made him fearful of reprisal if he testified.

Initially, the judge orally allowed the mistrial motion. Then, after defense counsel said that he intended to press a double jeopardy claim because the "manifest necessity" for the mistrial

---

[2]This was the act upon which the witness intimidation charge was based.

arose out of the Commonwealth's misconduct, she denied the motion without stating a reason for her action.[3]

The judge deferred action on the motion to dismiss until the jury returned a verdict, and then conducted an evidentiary hearing.[4] Reananne Donofrio (Reananne), a passenger in the victim's car when the incident occurred, was scheduled to, and did, appear as a percipient witness for the Commonwealth at the defendant's trial. The judge found that Detective Donofrio (Donofrio), who was aware of the defendant's history of violence and involvement with drugs, learned of Reananne's connection with the case through his review of Cambridge police reports. The judge also found that Donofrio learned from his brother, Reananne's father, that she had received communications about the incident from the defendant or his friends that made her fearful.[5]

On March 13, 2007, the day before the trial was set to begin, Donofrio and his partner, Detective Ahern, were on their way to a surveillance location in plain clothes when Donofrio spotted the defendant standing on a street corner with two of his friends and his three year old nephew. Donofrio told Ahern, who was driving, to stop. The two officers then got out of the car and approached the defendant, and a brief conversation ensued.

Donofrio conceded at the hearing that the encounter was not "friendly," and the judge found that Donofrio had no intention of making it friendly. Among other things, Donofrio stood only

---

[3]As to double jeopardy arising out of a mistrial, see, e.g., *Commonwealth* v. *Lam Hue To*, 391 Mass. 301, 311 (1984) (retrial after mistrial not barred absent "governmental conduct . . . intended to 'goad' the defendant into moving for a mistrial"). See also *Commonwealth* v. *Cousin*, 449 Mass. 809, 815 (2007).

[4]To the extent that the motion to dismiss was filed during trial, and ultimately acted upon by the trial judge prior to sentencing, we consider the trial and motion hearing to have been a unitary proceeding. As a result, we treat the defendant's appeal from his conviction as subsuming a challenge to the trial judge's order on his motion to dismiss and his motion for a mistrial.

[5]Although the judge found that Donofrio's brother told Donofrio about communications that made Reananne fearful, the record contains no evidence Donofrio was aware of any communications before the encounter. Indeed, Donofrio himself consistently said that he first learned about a mobile telephone "text" communication after the encounter and after Reananne testified and that his brother simply told him that Reananne was concerned about testifying because of the defendant's reputation and that of his friends. Reananne did not testify otherwise.

inches from the defendant as he spoke, used profanities, and had Ahern stand close behind the defendant throughout. Donofrio told the defendant that Reananne was afraid of him and was concerned about the trial. The defendant responded that he was "all set" and did not "have a problem with Reananne." After a few more "all sets" were exchanged, the encounter ended and Donofrio drove away. Neither Donofrio nor the defendant discussed the trial or the circumstances surrounding the incident on which the charges were based.

The defendant's account of the general circumstances of the meeting was not substantially different from Donofrio's, but his description of their conversation differed dramatically. According to the defendant, Donofrio stated that "you fuck with my family [and] we will kill you, I will make you disappear" and "if nothing happens in trial tomorrow, you're going to have to deal with us every day." In her findings, the judge recited that testimony and did not expressly reject it, although she appears to have rejected it by implication.

In any event, the defendant testified that as a result of Donofrio's threatening conduct, he was too fearful to testify at his trial and, in particular, was fearful of either contradicting the testimony of Reananne or implicating her in any crime. Had he testified, the defendant said, he would have told the jury that Reananne was lying, that she had been drinking on the evening in question, and that she had been using fake identification to procure her drinks.

The judge denied the defendant's motion to dismiss, stating that she did not credit the defendant's claim that the Donofrio encounter so intimidated him that he was afraid to testify. The judge also said that, even if the defendant had been intimidated, he had made no showing that his trial testimony would have differed from the testimony he gave at a probation revocation hearing following the incident, a transcript of which was admitted at trial with the Commonwealth's assent. That being the case, the judge found, the defendant had made no showing that the trial result would have been different had he testified in his own defense.

*Discussion.* Against that factual backdrop, we begin with Donofrio. Despite the Commonwealth's arguments to the contrary,

Donofrio's conduct plainly amounted to the sort of egregious misconduct that has provided a basis for remedial action in prior cases.[6] See *Commonwealth* v. *Manning*, 373 Mass. 438, 442-443 (1977) (officers sought to impair defendant's right to put on a defense). See also *Commonwealth* v. *Fontaine*, 402 Mass. 491, 497-498 (1988) (affirming dismissal of some of charges against defendant where prosecutorial misconduct — videotaping of conversation between defendant and his attorney — involved merits of defendant's case, creating irremediable prejudice).[7] There is simply no excuse for a police officer approaching any witness or party in a pending criminal matter and engaging in "deliberate and intentional" conduct that has a reasonable possibility of affecting the course of trial proceedings. See *Commonwealth* v. *Cronk*, 396 Mass. 194, 199 (1985).

The defendant's claim that Donofrio's misconduct chilled his right to testify in his own defense raises extremely serious issues, for there can be no doubt that the right to testify in one's own defense is among the most fundamental constitutional guarantees afforded to every person accused of a crime. As the United States Supreme Court stated in *Rock* v. *Arkansas*, 483 U.S. 44, 51 (1987), quoting from *Faretta* v. *California*, 422 U.S. 806, 819 n.15 (1975), "[t]he right to testify on one's own behalf at a criminal trial has sources in several provisions of the Constitution. It is one of the rights that 'are essential to due process of law in a fair adversary process.' " See *In re Oliver*, 333 U.S. 257, 273 (1948) ("A person's right . . . to be heard in his defense — a right to his day in court — are basic in our system of jurisprudence . . ."); *Brooks* v. *Tennessee*, 406 U.S. 605, 612 (1972) ("Whether the defendant is to testify is an important tactical decision as well as a matter of constitutional right"); *Nix* v. *Whiteside*, 475

---

[6]We note that the Commonwealth has not argued that Donofrio's actions should not be attributed to the Commonwealth. Indeed, where — as happened here — an on-duty police officer, accompanied by his partner, displays his official identification and confronts a defendant in connection with offenses that occurred in the officer's jurisdiction, it would be difficult to rebut a finding of government action. The fact that the officer here learned about the details of the case, at least in part, through his official supervisory duties would only bolster the basis for such an inference. In any event, as noted, the Commonwealth has not raised the point.

[7]Indeed, Donofrio's actions ran the risk of violating G. L. c. 268, 13B, the very statute under which the defendant himself had been charged.

U.S. 157, 164 (1986) (right to testify on one's own behalf in defense to a criminal charge is a fundamental constitutional right).

As in other instances where a defendant shows that the government has engaged in misconduct having the potential to interfere with a constitutional guarantee, the Commonwealth bears the burden of showing that no interference actually occurred. See, e.g., *Commonwealth* v. *Fontaine*, 402 Mass. at 495 (interference with right to counsel); *Commonwealth* v. *Lyles*, 453 Mass. 811, 814 (2009) (propriety of a stop).

When the right to testify in one's own defense is the right at issue, the relevant question is whether the Commonwealth has shown that police misconduct did not interfere with the defendant's right to testify, not whether any interference was sufficient to affect the trial's outcome. The focus is on interference alone because interference, although perhaps not a structural error, see, e.g., *Commonwealth* v. *Godwin*, 60 Mass. App. Ct. 605, 609 (2004), is a grave violation of a fundamental right with effects that are often difficult, if not impossible, to measure. For example, it is difficult to gauge the unique impact on a jury that may flow from a defendant's in-court denial of the crimes with which he has been charged. See *Rock* v. *Arkansas*, 483 U.S. at 52. In addition, where a criminal defendant is deterred by government misconduct from appearing in his own defense, public confidence in the fair administration of justice is placed at serious risk.

As noted earlier, the trial judge gave no reason for denying the defendant's mistrial motion and, in connection with the defendant's motion to dismiss, stated that she did not credit the defendant's testimony that his interaction with Donofrio made him too fearful to testify. But disbelief of the defendant's testimony is not affirmative evidence that the defendant was not intimidated. Mere disbelief of the defendant, therefore, does not satisfy the Commonwealth's burden. See *Commonwealth* v. *Gonzalez*, 67 Mass. App. Ct. 877, 881-882 (2006).

The Commonwealth can satisfy its burden, however, through use of any evidence in the case and is not confined to reliance on evidence it produces on its own. See generally *Commonwealth* v. *Albano*, 373 Mass. 132, 134 (1977) (knowledge, which is a state of mind, typically is shown by inferences flowing from all the facts and circumstances developed at trial); *Commonwealth*

v. *Stoddard*, 38 Mass. App. Ct. 45, 48-49 (1995) (same is true for proof of intent). Here, the evidence presented during the hearing on the motion to dismiss, if credited by the judge, was sufficient to support a finding that Donofrio's conduct did not cause the defendant to forgo his right to testify and, thus, that the Commonwealth had carried its burden. That evidence includes Donofrio's testimony that he never threatened the defendant. The evidence also includes the testimony the defendant gave at the probation revocation hearing and references to the fact the defendant had prior convictions with which he could have been impeached had he testified in his own defense. The possibility of impeachment with those convictions, as the trial judge noted, provided an alternate basis for the defendant's desire to present his side of the story in writing instead of from the witness stand. Finally, the defendant also fully and completely testified about his encounter with Donofrio at a posttrial hearing held shortly after the verdict was recorded.

But even if the Commonwealth failed to carry its burden of proving the lack of interference with the defendant's right to testify, dismissal of the charges against the defendant would not be automatically warranted. At least in the context of criminal proceedings, the normal remedy for prejudicial error is a new trial. See, e.g., *Commonwealth* v. *Brow*, 20 Mass. App. Ct. 375, 375-376 (1985); *Commonwealth* v. *Urkiel*, 63 Mass. App. Ct. 445, 451 (2005). Entirely preventing the case from proceeding is a very different matter. "Precluding trial of the accused based on some unauthorized or unconstitutional conduct on the part of wayward prosecutors, police, or other officers within the law enforcement or judicial system deprives the public of its ability to protect itself by punishing an offender." *Commonwealth* v. *Viverito*, 422 Mass. 228, 230 (1996). Moreover, except under carefully limited circumstances, "dismissing a criminal complaint without a trial and with prejudice is viewed as quashing or entering a nolle prosequi, and doing so amounts to a usurpation of the 'decision-making authority constitutionally allocated to the executive branch.' " *Commonwealth* v. *Borders*, 73 Mass. App. Ct. 911, 913 (2009), quoting from *Commonwealth* v. *Gordon*, 410 Mass. 498, 501 (1991).

Accordingly, dismissal of charges is warranted only "if the

Commonwealth intended to goad the defendant into moving for a mistrial . . . ; if the 'governmental conduct resulted in such irremediable harm that a fair trial of the complaint or indictment is no longer possible,' . . . ; [or] where the prosecutor's conduct is otherwise so egregious that dismissal is warranted to deter similar future misconduct." *Commonwealth* v. *Merry*, 453 Mass. 653, 666 (2009). See also *Commonwealth* v. *Manning*, 373 Mass. 438, 444 (1977) (dismissal warranted where official misconduct "was so pervasive as to preclude any confident assumption that proceedings at a new trial would be free of the taint"); *Commonwealth* v. *Fontaine*, 402 Mass. at 497-498 (charges dismissed where "irremediable prejudice"; trial on charges where prejudice "remediable"); *Commonwealth* v. *Druce*, 453 Mass. 686, 696 (2009) ("[a]n intentional violation by government agents of the defendant's right to counsel and a fair trial could result in the dismissal of an indictment if it irremediably prejudices the defense").

The first of the three triggers for dismissal is not present here for, although the defendant moved for a mistrial, no trial activity goaded him into doing so. As for the second trigger, given the view she took of the case, the trial judge did not reach the question whether a new trial would dissipate any taint Donofrio's rogue behavior may have produced. Here, as noted earlier, the burden is on the Commonwealth to show the absence of "irremediable" prejudice. *Commonwealth* v. *Fontaine*, 402 Mass. at 495-496. The record before us would permit a fact finder to conclude that the Commonwealth had carried its burden of showing that a new trial could proceed free from whatever taint Donofrio's conduct produced at the first one. To reiterate, Donofrio denied making threats. The defendant told his story at his probation revocation hearing. He gave the jury that testimony in written form, and he later testified fully about his encounter with Donofrio.

So far as we can determine, the third and final trigger (prosecutorial conduct so egregious dismissal necessary to deter future misconduct) has never been pulled. Indeed, the Supreme Judicial court recently observed that it had "never dismissed charges [when presented with egregious prosecutorial misconduct] in the absence of prejudice." *Commonwealth* v. *Mason*, 453 Mass.

873, 877 (2009).[8] Nevertheless, in *Commonwealth* v. *Merry*, 453 Mass. at 666, as well as in *Commonwealth* v. *Manning*, 373 Mass. at 443-444; *Commonwealth* v. *Jackson*, 391 Mass. 749, 754 (1984), and *Commonwealth* v. *Cronk*, 396 Mass. at 198-199, the court suggested that dismissal for egregious misconduct might be warranted as a deterrent to future misconduct of a similar type.

Having in mind that "[r]emedies for prosecutorial misconduct should be tailored to the injury suffered and should not unnecessarily infringe on competing interests," *Commonwealth* v. *Cronk*, *supra* at 199, we think that, if one accepts Donofrio's version of the encounter, as the judge appears to have done, prophylactic dismissal to prevent recurrence of similar encounters is unwarranted. Accepting Donofrio's version, no threats were made, and the events that led to the charges did not enter into the conversation. The meeting arose out of personal interests affecting Donofrio and his family, not from a misguided pursuit of law-enforcement activities. The prosecutor did not coordinate the meeting, had no prior knowledge of the meeting, and did not seek to capitalize on it. Unlike the situation in *Commonwealth* v. *Fontaine*, *supra*, the officer was not involved in the case itself.

Acceptance of the defendant's version of events, however, might well present an entirely different state of affairs. An express threat by a police officer to kill a defendant who is about to go on trial or an officer's implied threat that the defendant's acquittal would lead to continuing police harassment is so grossly improper, so far beyond the pale of acceptable police behavior, that dismissal of the charges might well be appropriate even in the absence of any demonstrated prejudice.

---

[8]In *Commonwealth* v. *Cinelli*, 389 Mass. 197, 210, cert. denied, 464 U.S. 860 (1983), the Supreme Judicial Court said that "[a]bsent egregious misconduct or at least a serious threat of prejudice, the remedy of dismissal infringes too severely on the public interest in bringing guilty persons to justice." The disjunctive standard set out in *Cinelli* suggests the possibility that, under some circumstances, the threat of prejudice is sufficient to warrant dismissal of charges even in the absence of a showing that the threat was realized. It may be that the "serious threat of prejudice" the court had in mind exists under circumstances where, as discussed below, dismissal is necessary to create a deterrent to future prosecutorial misconduct or where the Commonwealth fails to prove the absence of prejudice flowing from proven misconduct. See generally *Commonwealth* v. *Manning*, 373 Mass. at 442-445. Both possibilities are addressed implicitly in the order with which we end this opinion.

Under all of the troubling circumstances of this case, we think that further findings are essential to a proper disposition of the defendant's motions. Accordingly, the orders denying the defendant's motion for a mistrial and his motion to dismiss the proceedings are vacated. The case is remanded for reconsideration, first, of the motion for a mistrial in light of the principles set out above. If the mistrial motion is allowed, then the judge is to reconsider the motion to dismiss, also in accordance with the foregoing principles. In either case, and without limitation, express findings on the content of the conversation between the defendant and Donofrio during their March 13, 2007 encounter are essential.

*So ordered.*

BROWN, J. (dissenting). I agree with the majority that there is simply no excuse for a police officer approaching any witness or party in a pending criminal matter and engaging in "deliberate and intentional" conduct likely to intimidate such a person and thereby affect the course of trial proceedings. *Commonwealth* v. *Cronk*, 396 Mass. 194, 198-199 (1985). The only question is whether a new trial could remedy any prejudice, or whether dismissal, the relief sought by the defendant in his motion at trial, is required here.

The dismissal of criminal charges is the most severe sanction a court can impose to remedy misconduct on the part of the Commonwealth. "The dismissal of a criminal case is a remedy of last resort because it precludes a public trial and terminates criminal proceedings." *Commonwealth* v. *Cronk*, 396 Mass. at 198. In *Commonwealth* v. *Cinelli*, 389 Mass. 197, 210, cert. denied, 464 U.S. 860 (1983), the court held that "[a]bsent egregious misconduct or at least a serious threat of prejudice, the remedy of dismissal infringes too severely on the public interest in bringing guilty persons to justice."

Along these lines, the Supreme Judicial Court recently observed in *Commonwealth* v. *Mason*, 453 Mass. 873, 877 (2009), that "we have never dismissed charges [on the basis of official misconduct] . . . in the absence of prejudice.[1] See *Com-*

---

[1]The disjunctive standard set out in *Cinelli* suggests the possibility, at least,

monwealth v. *Lewin*, 405 Mass. 566, 586 (1989)." In clarifying the type of prejudice that might support dismissal, the court drew a distinction between situations in which official misconduct directly "affect[s] the right to a fair trial," as opposed to other types of protected interests. *Commonwealth* v. *Mason, supra.* The court went on to observe that the "[p]rejudice required for dismissal focuses on the subsequent trial and the interference with procedural rights therein." *Ibid.*, quoting from *Commonwealth* v. *Viverito*, 422 Mass. 228, 231 (1996). Thus, it is where government malfeasance affects a defendant's intratrial due process rights that the remedy of dismissal is most strongly indicated.

In *Mason, supra* at 879, the police misconduct involved improper postarrest detention and so did not burden the defendant's right to a fair trial; dismissal, the court concluded, was not required. By contrast, in the current case, the defendant's intratrial procedural rights are directly implicated; viz, the defendant's right to testify on his own behalf at trial. This is a fundamental constitutional right.

As the United States Supreme Court stated in *Rock* v. *Arkansas*, 483 U.S. 44, 51 (1987), quoting from *Faretta* v. *California*, 422 U.S. 806, 819 n.15 (1975), "[t]he right to testify on one's own behalf at a criminal trial has sources in several provisions of the Constitution. It is one of the rights that 'are essential to due process of law in a fair adversary process.' " See *Nix* v. *White-*

---

that criminal charges might be dismissed on the basis of sufficiently egregious official misconduct, even absent prejudice. Such a rule arguably would conflict with a number of related decisions. In *Commonwealth* v. *Viverito*, 422 Mass. 228, 230 (1996), for example, the court observed: "In several contexts similar to this one, we have stated that a defendant must show prejudice in order to justify dismissal of charges with prejudice." In *Commonwealth* v. *Imbruglia*, 377 Mass. 682, 691 (1979), the court held that preindictment delay could support dismissal of charges only in cases of intentional delay that produced actual prejudice. The same test was deemed applicable to justify dismissal when the Commonwealth fails to afford an arrestee an initial appearance at the first opportunity. See *Commonwealth* v. *Perito*, 417 Mass. 674, 681-682 (1994). In a recent case, a showing of prejudice was required to support dismissal when police prevented an accused from obtaining an independent physical examination after an arrest for operating while under the influence. See *Commonwealth* v. *Mason*, 453 Mass. at 877-879. See also *Commonwealth* v. *Hampe*, 419 Mass. 514, 515, 521-524 (1995). Ultimately, it is not necessary to consider this question here since I am of opinion that the defendant was, in fact, prejudiced by the government misconduct.

*side*, 475 U.S. 157, 164 (1986) (right to testify on one's own behalf in defense to a criminal charge is a fundamental constitutional right). See also *In re Oliver*, 333 U.S. 257, 273 (1948) ("A person's right . . . to be heard in his defense — a right to his day in court — are basic in our system of jurisprudence . . ."); *Brooks* v. *Tennessee*, 406 U.S. 605, 612 (1972) ("Whether the defendant is to testify is an important tactical decision as well as a matter of constitutional right").

Specifically, the right to testify is found in the compulsory process clause of the Sixth Amendment to the United States Constitution. See *Washington* v. *Texas*, 388 U.S. 14, 17-19 (1967). Included within a defendant's right to call witnesses is "a right to testify himself, should he decide it is in his favor to do so. . . . Even more fundamental to a personal defense than the right of self-representation, which was found to be 'necessarily implied by the structure of the [Sixth] Amendment,' . . . is an accused's right to present his own version of events in his own words." *Rock* v. *Arkansas*, 483 U.S. at 52, quoting from *Faretta* v. *California*, 422 U.S. at 819. In short, "[a] defendant's opportunity to conduct his own defense by calling witnesses is incomplete if he may not present himself as a witness." *Rock* v. *Arkansas*, *supra*. See *Harris* v. *New York*, 401 U.S. 222, 225 (1971) ("Every criminal defendant is privileged to testify in his own defense . . .").

Further, the right to testify is "a necessary corollary to the . . . guarantee against compelled testimony [found in the Fifth Amendment to the United States Constitution]." *Rock* v. *Arkansas*, *supra* at 52-53. "[The Fifth Amendment's privilege against self-incrimination] is fulfilled only when an accused is guaranteed the right 'to remain silent unless he chooses to speak in the unfettered exercise of his own will.' . . . The choice of whether to testify in one's own defense . . . is an exercise of the constitutional privilege." *Rock* v. *Arkansas*, *supra* at 53, quoting from *Harris* v. *New York*, 401 U.S. 222, 230 (1971), and *Malloy* v. *Hogan*, 378 U.S. 1, 8 (1964). See also *Ferguson* v. *Georgia*, 365 U.S. 570, 602 (1961) (Clark, J., concurring) (describing "right of a criminal defendant to choose between silence and testifying in his own behalf"); *Jones* v. *Barnes*, 463 U.S. 745, 751 (1983) (defendant has the "ultimate authority to [decide] . . . whether to . . . testify in his or her own behalf").

Detective Kevin Donofrio's conduct, therefore, burdened what is unquestionably a core fundamental constitutional right, the right to testify in one's own defense. However, in her memorandum of decision, the trial judge indicated that even if police misconduct rendered the defendant "too afraid to testify, the motion [to dismiss] still fails." The trial judge's conclusion in this regard was premised on her belief that, to prevail, there must be a "determination that the defendant's testimony at trial would have led to a different result at trial." This was error.

While deprivation of the right to testify has not been characterized as structural error, see *Commonwealth* v. *Figueroa*, 451 Mass. 566, 572 n.5 (2008), as to which harmless error analysis is irrelevant, it nonetheless represents a grave violation of a fundamental due process protection. Moreover, it is the kind of misstep as to which harmless error analysis will often be difficult, if not impossible, to apply. The unique impact on a fact finder of a defendant's in-court denial of the crimes charged, for example, is not readily gauged. See *Rock* v. *Arkansas*, 483 U.S. at 52. In addition, where a criminal defendant is deterred by government misconduct from appearing in his own defense, public confidence in the fair administration of justice is placed at serious risk.

Here, defense counsel submitted an affidavit and stated at the hearing on the motions that he had explained to the defendant that, based on his assessment of the evidence, it was in the defendant's best interest to testify, and that the defendant was choosing not to testify against his advice and the reason was the encounter with Donofrio. The defendant and Donofrio both testified regarding the encounter. According to both the defendant's and Donofrio's testimony and the judge's findings, the officer stopped the defendant, stood within six to twelve inches in front of him while another officer stood behind the defendant; the officer identified himself as a police officer, handed the defendant a business card identifying himself as such, and referred to the trial, saying his niece was concerned about it. As the judge noted, profanities were used, and Officer Donofrio conceded it was not a friendly encounter nor did he intend it to be. These facts, upon which both parties agree, describe an encounter meant to intimidate; this — especially given a police

officer's authority and the potential power it creates — not only objectively supports the defendant's statement that he was afraid to testify, but also suggests a taint that the remedy of a new trial cannot cure, because the impact of the, at a minimum implicit, threat would remain. Consequently, and in view of the fact that the standard for determining whether official conduct requires dismissal of a complaint is whether a "serious *threat* of prejudice" (emphasis supplied), *Commonwealth* v. *Cinelli*, 389 Mass. at 210, is posed, it seems to me that egregious government misconduct that impairs a defendant's right to testify in his own defense poses "a serious threat of prejudice" and therefore requires dismissal.[2] No inquiry into the likely effect of such testimony is required.

Admittedly, the judge discredited the defendant's testimony that his decision not to testify was due to Donofrio's actions. However, it was the Commonwealth's burden at the motion hearing to establish that the misconduct did not pose a threat of prejudice — i.e., did not induce the defendant to refrain from testifying. See *Commonwealth* v. *Fontaine*, 402 Mass. 491, 495 (1988) (government bears burden of establishing that its own egregious misconduct created no prejudice to the defendant's position). See also *Commonwealth* v. *Waters*, 399 Mass. 708, 716 (1987) (strict standard applies to waiver of basic constitutional rights). While the defendant offered his attorney's affidavit and his own testimony in support of his contentions, the government failed to offer any significant evidence on this point. In the circumstances here, I conclude that the judge's finding regarding the basis for the defendant's decision to waive his right to testify is manifestly unreasonable.[3] Moreover, as I have already noted, the judge's determination of this point appears to have been informed, at least in part, by her mistaken belief that it was ultimately immaterial whether Donofrio's conduct induced the defendant to waive his right to testify unless that testimony "would have led to a different result at the

[2] I do not consider the question whether the result would be any different here were proof of actual prejudice, as opposed to the "serious threat of prejudice," required for dismissal.

[3] As the defendant's claim relates primarily to government coercion, the burden is on the Commonwealth to prove that any waiver was knowing and voluntary. See *Commonwealth* v. *Freeman*, 29 Mass. App. Ct. 635, 641 (1990).

trial." In any event, Donofrio's actions were objectively likely to impair the defendant's right to testify in his own defense and, in view of the evidence adduced at the motion hearing,[4] I conclude that the requisite "serious threat of prejudice" was posed. The defendant's motion to dismiss should have been allowed.

I am, of course, mindful of the social burdens occasioned by such a decision. However, any sanction short of dismissal is unlikely to make the defendant whole in this case. In view of the nature of the police misconduct, and the clear message of menace it embodied, how can the court be certain that the defendant's right to testify would not be impaired at any subsequent trial? See *Commonwealth* v. *Perrot*, 38 Mass. App. Ct. 478, 481 (1995) ("[m]isconduct that causes irremediable prejudice to the defendant is ground for dismissal"). "Our emphasis has always been that any remedy should be tailored to cure the prejudice to the defendant." *Commonwealth* v. *Hine*, 393 Mass. 564, 573 (1984). This is what I would seek to do here.

This conclusion is bolstered by the fact that this case turned entirely on the credibility of the witnesses, rendering the loss of potentially exculpatory testimony particularly significant.[5] Moreover, the Commonwealth's case was far from overwhelming. See *Commonwealth* v. *Williams*, 450 Mass. 894, 906 (2008) (potential for prejudice occasioned by government misconduct increased where prosecution's evidence not overwhelming). Indeed, even without the defendant's testimony, the jury acquitted him of one of the three crimes with which he was charged (assault and battery), and convicted him of a lesser included offense in connection with one of the other charges. These factors sharply increase the potential for prejudice here.

Consistent with the foregoing I would set aside the verdicts and remand this matter to District Court where an order should enter dismissing the charges against the defendant, with prejudice.

---

[4]Needless to say, the fact that the defendant did not testify, coupled with his contemporaneous claim that his decision was based on Donofrio's intimidating conduct, provides strong evidence in support of the defendant's claim. Contrast *Commonwealth* v. *Hennessey*, 23 Mass. App. Ct. 384, 387 (1987) (defendant gave no indication until long after trial that his right to testify had been denied).

[5]As already noted, the defendant asserted at the motion hearing that in addition to relating his own version of the facts, he also would have impeached the testimony of Reananne.